Our next case is case number 417-0646, the people of the state of Illinois v. Elliot Murphy. For the appellant, we have Ms. Borland, and for the appellee, Mr. Manchin.  Good afternoon, your honors. My name is Borland, appellant for Elliot Murphy. As state court is aware, we've raised three issues in the brief. Today, I plan on focusing on our first and third error concerning closing arguments in sentencing, but if this court has questions on the ineffective assistance claim, I would be happy to answer that as well. In this case, the state committed plain error by relying on the prior testimony of Brandon White in the closing argument, when that prior testimony was only admitted to appellants that never published the jury. During closing arguments... Counsel, let me ask you this. When they were confronting the witnesses with the prior inconsistent statements, didn't they elicit the statements literally from a transcript of the prior proceedings by asking, when you previously testified, wasn't this question asked, was this your response, and they actually outlined the actual prior testimony? Yes, however, Brandon's answer to those questions were, I don't recall. So, in effect, the testimony was, I don't recall if I gave that testimony. In the cases, say, that many witnesses said, I don't recall, the state or the party appointed to introduce the statement has to actually introduce that statement. And that's not introducing the statement by confronting the witness with it? No, the case is pretty much uniformly Evans and Brothers, both say, Brothers in this district, have been appointed to actually introduce the statement. Okay, and then, also here, the transcripts were admitted, the transcripts from these prior proceedings where the prior statements were recorded, transcribed by a court reporter. Those were admitted, right? Yes, they were admitted into Evans and never published to the jury. And I don't quite understand, because you cite to several cases and talk about the fact that those cases were upheld because the transcript was not given to the jury, so the jury didn't get certain statements that they shouldn't have received or shouldn't have read. So, which is it? Are you saying that the transcript should have been published to the jury, or no? I think they could have been published to the jury, they could have been given in deliberations, or they could have simply, as you suggested, stipulated when they might have given the prior testimony, the question came about. And I think, because I know it's confusing, because those cases, it's the converse, where the defendants are arguing something. I think it's easier maybe to look at this case to make things happen, because Sean Steeley, Kadrikia Jackson, and Senator White, the state also introduced prior inconsistency in its ruling then. Let me ask you this. Is it disputed that these witnesses gave this testimony? Is there anything indicating that that's inaccurate? No, but that's kind of the same thing. It's indisputed in relation to our second issue, and that was because the first trial was in front of the school records. But that was the evidence for the first trial, much like this trial. He did not give that testimony to this trial. This trial gave his testimony, and I don't recall what happened on August 24th. What case stands for the proposition that a transcript that is admitted into evidence and is testified to explicitly during examination and answers, even though the answer is what I don't remember, what case stands for the proposition that that has to be published to the jury, that they have to be given copies of it or the original so that they can sit there and peruse it? This seems to be a unique situation where this has never happened before. The closest case would be Dredger's, I think, where they questioned about the witness's prior statement. It was under a different section of 115-10.1. The witness had to acknowledge it. The witness did not acknowledge it, so it sort of came out to the jury that way, but without being able to put it in, you still have to publish it. And I think when you think about admission, getting back to the other three witnesses, those witnesses' prior statements were interviews with police officers, and the state only presented edited portions of those interviews to the jury, and they omitted those portions of the actual edited tape to the court. And they also omitted the full portion of those tapes to the court. And I don't think anyone picked out that neither the state nor the defense counsel could make arguments about the portions of the full transfer, the full edited tapes that were omitted in the court that might be given to the jury. And that's because the evidence was not given to the jury. I'm not sure what point you're making there. Oh, I'm saying if you look at, so I'm just letting you know the difference between admission and publication. So the full interviews of Shawn, Padilla, etc. were admitted into evidence. And the full transcripts from these witnesses, that was also admitted, right? But the edited portions of the interviews were published to the jury, and that's the evidence given to the jury, what the jury sees. So all that the jury, in this case, was bringing them out of the call of the act as well. And I think the harm from that is, even with a mere stipulation, when they gave the prior testimony and questioned him about, the jury could think, okay, that's what his prior testimony was. I will compare that testimony to the other evidence in this case. But with his testimony only being, I don't recall if I said that. I don't recall if I said that. And the state then argued in closing, which is our primary interpretation of arguing in closing, he did say this, and it was consistent. There's that room of, he only said he didn't recall. The state said he said this. So it's that that's erroneous. But you're not disputing that he said this. In the prior trial. Right, you're not disputing that. Correct. But it's the same thing with defense counsel not presenting evidence at this trial, that they said at the first trial, that's ineffective. And we would say the state committed a mistake in this case by not presenting, if that was his testimony from the first trial. I don't understand that they did present his testimony from the first trial by the question. But his answer to that was, I don't recall. But his statements remain under oath. He doesn't have to acknowledge his statement. So the fact that he doesn't recall is inconsistent with what his testimony under oath was. And that certainly would have allowed him to produce his prior statement, but they never ultimately did produce that prior statement. Okay, so your sole argument, then, is not that there was any problem with how the prosecutor phrased the questions for purposes of invoking or getting the substantive evidence, the prior testimony. It's just that the transcript should have been published to the jury. That's the problem? Is that right? They wanted to rely on it in closing. The state says arguments in closing. He said he didn't say this. We proved he did. I don't think he did say exactly. He said he didn't say this, but the evidence shows he did. And that's our argument. The arguments weren't proper because the arguments were based on evidence outside of the trial. And the evidence to the jury was he didn't recall.  No, and I think that supports our argument. The parts that were, like if a witness was in case for that police report, the parts that he was questioned about and it was proven out that he made that, then that would be the evidence to the jury, but not other things in that statement. So you'd have to redact it. Right. If you were going to submit it to the jury. And then you could only make arguments based on the portions of the police report that the witness acknowledged that the state somehow proved the witness made in that police report. So it wasn't published to the jury. And, of course, with a police report, it's not something where a witness is questioned under oath. It's not something that is transcribed in real time as they are giving that sworn testimony. Correct? Correct. And with the transcript, the specific questions asked review the actual questions and gave the actual testimony that was given at the prior hearings. And if Brandon had said that was my testimony, we wouldn't have an argument here. But we're saying the evidence to the jury was that I don't recall. So that was the evidence presented. Brandon does not recall that he gave this testimony. And it never followed up. And 115.10, you do have to actually present the statement in some form. So presenting the statement in some form, that's not satisfied by confronting the witness with the exact statement and response that they gave under oath. That doesn't satisfy that. Evans says very clearly from the third district, when a witness says he cannot recall making a statement, it doesn't come down to the party who wants to produce that statement or to rely on that statement to produce that statement at trial. Now, in Evans, were we talking about prior sworn testimony? The way that Evans went, it was actually witnessing both the Fifth Amendment and the appeal, the state kind of tracked back and said, this tracks the witness's testimony exactly to what the witness said at his own district hearing for the same case. And so in that case, it was the Federal Jury Foundation. Because they didn't actually say, did you give this testimony? So it's not the same facts. It's not identical, no. But it does have that validity. And I do think it was important in this case for the jury to be able to recall in their own recollection of what Brandon testified to, which, again, I think they couldn't do. What do you mean recall with their own recollection? They weren't at the prior trial. Well, but again, of what he testified, assuming the actual fault was not even a mere stipulation that Brandon gave that prior testimony, I think it then caused the jury to rely on what the state said about that testimony. And that's what we're focusing on. Was what the state said inaccurate? Can you disprove that? They did describe it in details, but then they would repeatedly say, it's consistent with all the other witnesses. It's consistent, it's consistent. And there were actually a lot of inconsistencies, because the state witnesses were kind of all over the place on who was involved in each offense, which is part of our post-endowment evidence analysis. For example... So they in no way mischaracterized what your client said at the prior trial? Not when they were talking about details, but when they said it was consistent with everyone else, that was a mischaracterization, because there were significant details, and who Brandon said was involved, versus who some of the other witnesses said were involved. And that's why I think it's important for the jury to be able to rely on their own recollection of the evidence. Had they said, Brandon gave his prior testimony, they could rely on that. When the state doesn't prove that testimony they're questioning him about was his actual testimony, and then they just say, he testified consistently, that causes the jury to think, maybe there's stuff that he didn't even hear. That's just some sort of proof. Exactly what we questioned him about was exactly what he said. That's our argument. And I think it matters in this case because it was a post-endowment case. You have defense witnesses on one side who were present at the offense, who said that Elliot was not involved. And the state witnesses said he was. It's a poor credibility case. No physical evidence. By talking about David's testimony, it added an additional witness to the state's team, literally taking the scales in the state's favor. And the state witnesses were inconsistent in this case. They all, at the time they made Elliot, were under suspicion of the crime themselves. There was Martin, who said he was present at the scene of the crime and that Elliot was involved. Cedric Brown said he was present and he admitted he said in the past Elliot was involved. But he said now, everything was so confusing, he didn't really know what was going on. And then beyond that, they just had Malcolm Spence who talked about his statement. And Martin was right, they were inconsistent on the details. So again, this is why the details of exactly what Raymond said were important. And the prosecutor's failure to present that to the jury instead of to Raymond. Failure to present that to the jury in terms of confirming that he gave that testimony. Correct. Even though the jury heard the statements, heard the questions he was asked at trial, heard the responses he gave at trial. But you still maintain that the jury did not hear, they could not find that he gave that testimony. Even if they thought that was stuff that he said, when the prosecutor said he was closing generally, he gave prior testimony that was consistent with what the other witnesses said. Without saying the testimony you questioned him about was his testimony. That, again, causes more of a general verdict in this case. Instead of a general consideration, it was a general conviction. They were never told that was his prior testimony. And that statement was never introduced. I would also like to address our sympathy for him today. Elliot should have received a new sentencing hearing because he was 16 years old on the date of this offense. And the trial court found in the record supports that he has rehabilitative potential, however, he was given a de facto life sentence. The state makes two really important concessions in this case. First, they concede 55 years as a de facto life sentence. That includes 40 years at 100% for murder, 15 at 85% for attempted murder, and as the state agrees, Buffer held any sentence over than 40 years is a de facto life sentence. The state also concedes that Elliot has rehabilitative, the trial court found Elliot has rehabilitative potential. These two facts pretty much govern this issue because according to the United States Elmhurst Supreme Court, life sentences are not legal for juveniles who have rehabilitative potential, but they may only be given to the rarest of juvenile offenders who are irredeemably corrupt, permanently imploratable, and irretrievably uncredited. So at the time the trial court imposed the 55-year sentence in this case, it obviously, Buffer hadn't been decided. They didn't know at that point that the range for juveniles who have rehabilitative potential is 20 to 40 years. So the proper remedy in this case would be to demand to allow the trial court to impose a sentence consistent with their finding of rehabilitative potential within that range. A nuisance in hearing is also warranted because the facts of this case show that Elliot, the crimes committed in this case, cannot be separated from the transient characteristics of youth. And, in fact, Elliot should be permitted to be authorized in this case. When Miller talks about diminished culpability of juveniles, it talks about the fact that they act impulsively, it talks about peer pressure, it talks about the kind of influence that not having a strong peer movement can provide. All of those factors are at stake here. If you take a step back and look at what happened this day, all of these kids got together for the specific reason that Cedric Brown and Brian Armour had come in to fight each other. They all watched as Cedric and Brian fought each other. That fight got broken up, but let alone the kids dispersing, they decided to go where Cedric and Brian could fight again. It was while en route from the first and second fights between Cedric and Brian that the attack against Mr. Newingham, initiated by all accounts by Nancy Johnson, and then the rest of the boys who were involved, allegedly involved, all joined in together at once. Then the second fight between Cedric and Brian occurred. Then the attack against Mr. Wilson occurred in the park. There was some dispute on who started that, whether it was Edward or Deontay, but again, you see the boys fall out from this line. So there was no prior planning in this case. This shows to be the impulsive reactions of kids who were kind of all amped up because of these fights, and it is impulsive in nature. And at the sentencing hearing, though the trial court found rehabilitative potential, it didn't make a comment that there was no evidence that any direct pressure was put on Elliot to involve himself in this. But peer pressure doesn't really work like that. Peer pressure is not, hey, I'm smoking marijuana, you have to smoke too. It's joining in with what your peer group is doing, wanting to look cool and pressure peers, and I think that's exactly what was occurring in this case. The Supreme Court also talks about how the absence of a parental neglect is very important in any case. And in this case, I think it's especially important because Elliot had never had any contact with his father, he was raised by his mom, he had no relationship, so when you don't have the strong father role model, his brother and his friends, that's his family. So when they act out, he is going to be more likely to join in. These crimes were obviously very brutal, and we're not trying to undermine that. Miller says brutality is not the issue, the seriousness of the crime is not the issue. Does the crime show irretrievable depravity, or can it be attributed to the facts of youth? And I think in this case, the answer is you can't separate the transient characteristics of youth. And again, as the trial report found, Elliot does have rehabilitative potential. At sentencing, the state did present evidence of prior acts that he committed as a 13- and 14-year-old, and they did have the incident when he was in jail, awaiting his first trial against another inmate. However, importantly, all of those crimes occurred when Elliot was still a juvenile, and that first sentencing hearing occurred in 2011. The second sentencing hearing occurred in 2017. There was absolutely no evidence of any crimes committed by Elliot, and he didn't even receive a ticket that he had received in jail. He said at sentencing that he had matured the last few times that he was in practice. He felt remorse for these victims. This was what it took for him to realize what he was doing was wrong. Miller says children grow out of the behavior that causes them to commit violent crimes as children, and the evidence shows that's what occurred here. So for that reason, I think Elliot should receive a sentencing hearing. Thank you. Thank you, counsel. Mr. Manchin? Good afternoon, Your Honor, Mr. Chief of Court, counsel. In this case, there was no plain error. The testimony regarding the prior testimony, the questioning regarding the prior testimony in the two hearings was admitted without objection by the defendant, was referred to a closer partner without objection. Nothing raised in the post-trial motion regarding the admissibility or the lack of admission of the prior statements. The only objection made in the trial court was that the transcripts themselves should not be admitted because they're unnecessary because, according to the defense counsel, the statements were already before the jury. So the defense claim today is directly contrary to the position that took the trial court position was these statements are before the jury. The claim today is they're not before the jury. So basically, at trial, defense counsel said, because you already asked the witness about the specific statements and the specific answers given and allowed him to agree or not agree as to whether or not he made those statements, you don't need to admit the transcripts because the jury already heard it. And they don't need to read in the transcript because they heard it. He did not go into that much detail. He simply said, we don't need the transcripts because the jury already heard the testimony, already heard the statements. So the statements are before the jury. But the transcripts ultimately were admitted. The transcripts were admitted over the defendant's objection because he's objecting on the basis they're not needed. You boil down what the defendant claim is, and I had a hard time understanding it. What it comes down to is that there was not a formal foundation laid by a stipulation or statement of somebody saying, these are, in fact, the witness's prior testimony. That seems to be the entire heart of the defendant claim, is that without somebody saying, this is, in fact, the prior statement of this witness given under oath in those prior proceedings, they're not before the jury. Is that required? Are they right? I think in this situation, the reason there was not a formal offer in that fact was there was an agreement between the state and the defense counsel on the record. The prosecutor says we had an agreement that we would be able to present these prior statements without calling a court reporter. Yes. So, in effect, the prosecutor believed it would be the same way. We proceeded in the exact manner the defendant agreed should be proper, and now the defendant is saying, no, you had to have that formal proof. And I think that in the context of this case, that contention should be simply rejected. The witness was tested, questioned, counseled on page 39 of the records, lines 15 to 30. Then the prosecutor reads from the transcript the exact question and the exact answer. That procedure was used in every single question, in every single part of the prior proceedings. No objection. The jury could, that statement is before the jury, with or without formal offer, without the formal foundation. Did you say the prosecutor indicated to the court that there was an agreement with defense counsel? Yes. Was defense counsel present when the prosecutor made that representation to the court? I can give you a second hand. It was on page... Oh, correct. It's 3004 and 3005 of the record. I'm quoting. When the defense counsel objected on exempt 25, we did have an agreement with defense counsel prior to trial that there would be stipulation that the transcripts were accurate and we wouldn't have to call the court reporter. The defense counsel responded, I am not objecting to the accuracy of the transcripts but be only to the need to admit them whether they're testimony presented regarding the transcripts. So there is an express agreement that this procedure be followed. To now say the defendant gets to renege on that agreement and get a new trial because they followed the procedure he agreed to is simply ridiculous. I submit that the evidence was before the jury. Whether it was properly done or not, it was before the jury. Since it was before the jury, the prosecutor could refer it. There is no claim that those transcripts were inaccurate, that they were not, in fact, correct transcripts, nor did the prosecutor misrepresent what was said in those transcripts in this hearing before. To allow the defendant a new trial was simply raising the quorum over substance in this particular case. The evidence was before the jury in which the prosecutor could refer transcripts. With respect to the de facto life sentence, the trial court here expressly referred to the statute setting forth factors that a court is required to consider in giving a juvenile a life term. Defendant's claim will appeal is simply that the trial court did not adequately consider some of those factors, namely that he did not recognize the defensory ability of the defense. Counsel, was the trial court required in order to impose the sentence it posed? I understand that we have new case law that came out after the trial court imposed the sentence here, but was the trial court required under existing case law to find that the defendant was permanently incorrigible or irretrievably depraved before imposing a de facto life sentence? The cases have clearly stated that there is no requirement that an express finding of incorrigibility be made. Okay, so I understand, so you're saying the trial court doesn't necessarily have to state it on the record. Is such a finding inconsistent with a specific finding that the defendant has rehabilitative potential? No. So you can have rehabilitative potential, but be permanently incorrigible or irretrievably depraved? What I'm saying is that the minimal rehabilitative potential noted by this court was reflected in the sentence of 55 years, as opposed to the 80-year sentence that had been imposed after the first trial and the 80 years that was requested by the prosecutor in this case. The very fact that the trial court has reduced the defendant's sentence from 80 years to 55 years shows that he has in fact given weight to the defendant's rehabilitative potential which he found to be minimal. But it's still a de facto life sentence according to the Supreme Court. But the Supreme Court says you can give a de facto life sentence to a juvenile as long as the trial court considers the defendant's age and the intended circumstances of use. And as long as the minor does not have any rehabilitative potential. Isn't that what the case law says? No, the case law does not say that just because the defendant has rehabilitative potential and must give the minimum sentence or that anything above the minimum or the maximum of 40 years would be, you know, the maximum for a national life term would be improper. Rehabilitative potential is just one of the factors. And even with juveniles, the trial court doesn't have to give that rehabilitative potential more weight than it gives to any other consideration. Mr. Manchin, doesn't the case law speak to reserving de facto life sentences for those rare minors who are permanently incorrigible or irretrievably depraved? That is, to be imposed in rare cases? What the defendants here are arguing is that the trial court simply weighed the facts more. That is their whole argument. The trial court weighs... So are you saying they didn't make the argument that aligns with the question I'm asking you? Because you're not answering my question. I'm saying that in this particular case, the trial court found that the defendant's minimal rehabilitative potential did not require him to give less than a natural life sentence. At the time of this sentencing hearing, the case law was generally that anything in the realm of 55 to 55 years was generally deemed to be a de facto life sentence, depending on what case you look at. There are cases cited in the defendant's original brief discussing that. I think there are cases on both sides of the Supreme Court. I'm just saying that... We have a bright line now. Yeah, we have a bright line with the Supreme Court. And that's 40 years. And I submit that even with that bright line, that the trial court decision here was not unconstitutional. Counsel, I think that's a good argument, except for one thing. I don't think the Supreme Court agrees with you. I think the Supreme Court has made it perfectly clear you can't give a de facto life sentence if the juvenile has rehabilitative potential, which means you can't prevail on this argument. You said they have not said that. They have not said that. I do not think that the court has ever held that rehabilitative potential in and of itself precludes a de facto life sentence. There are... In 2018, in the Rodriguez case, it was a... What they said, the rehabilitative potential of the minor did not need to be given greater weight than other factors. People versus branch, again, they say that rehabilitative potential does not need to be given greater weight. But aren't all of these cases prior to the case law that's been coming down from the Illinois Supreme Court and the United States Supreme Court with respect to juveniles specifically? No, these are 2018 cases which are talking about weighing rehabilitative potential against versus the other factors. Where there was a specific finding of rehabilitative potential by the trial court? Well, the trial court found that there was some rehabilitative potential, but does that mean that he is limited to... That he cannot consider any other factor? I'm just suggesting that in this particular case, the trial court's weighing of particular factors was not an abuse of discretion and did not result in an unconstitutional sentence. I'm wondering, shouldn't we start with, was a de facto life sentence imposed? Isn't that the starting point? That is the starting point. Under Buffalo, there's no question but that a de facto life sentence was given. But the Supreme Court has said that a de facto life sentence, both the Illinois and the U.S. Supreme Court have said you can give a de facto life sentence to a juvenile as long as the trial court considers the defendant's age and the attendance circumstances of youth. The trial court did that here. He expressly, on the record, cited the statute which sets forth the same factors that the Homeland Court sets forth as far as what you have to consider in determining a sentence. So this really boils down to the question of asking this court to substitute the defendant in the trial court. And as I cited in my brief, the mere fact that de facto or life sentences are not favored for juveniles does not mean that this court is entitled to go in and rethink whatever the trial court did or substitute the judgment for whatever the trial court did below. The trial court here did exactly what the law at the time and today would want it to do. He considered the defendant's youth in all the relevant factors. He considered the defendant's whole life and the defendant says that it has to be considered. Yes, but the Supreme Court has not said that you have to consider the whole life as aggregating. It also has not said that it has to be considered as mitigating. It just says it has to be considered. And it was done. The defendant has cited the great impact from the lack of a father in his life. But there was no evidence in this. The only evidence in the trial is that there was no father. But the studies that they referred to in the brief and allude to today were never before the jury or before the sentencing court. So he's trying to get a reversal in evidence for the court as far as what the effect of not having a father is. The trial court here considered all the factors. That's all he's required to do. And the defendant's claim that he weighed them along is not a basis to disturb the trial court's decision. So there are no further questions? Oh, the case that I was looking for is on page 21 of the brief. Davis, Croft, Patterson, and Johnson. Nothing in the case is discussing life terms for juveniles. Suggests that we in the courts are free to substitute judgment for that of the sentencing court. So it's Davis. They're signing on page 21 of the brief. Page 21, okay, thank you. People versus Davis, Croft, Patterson, and Johnson. All from 2018. Saying that the... Nothing in any case is discussing life terms for juveniles. Suggests that you in the courts are free to substitute judgment for that of the sentencing court. That is what the conclusion of the question here is. I submit that the trial court's decision here was not an abuse of discretion and did not result in a unconstitutional sentence. If there are no further questions, I will stand by my brief. All right, thank you, counsel. Any rebuttal? Counsel, I know you probably already have planned what you want to say, and I'm sorry to mess up your plan. But can we talk a little bit about people v. Holman? Because it seems to suggest that you do need to have that finding of irretrievable depravity, permanent incorruptibility, and irreparable corruption. Yes, I would agree with that. And Holman is based on Montgomery, and I wanted to quote this Montgomery. Montgomery is all about why murder is not just procedural. It's substantive. The choice was, are we looking at a manner of determining punishment, or are we looking at prohibiting a certain category of punishment for a class of offenders because of their status? And it shows the latter. It is a substantive reward. Life sentences are unconstitutional, substantively, for all but juveniles who are incorrigible. And that's why Holman said there are two steps. The trial court does have to make that finding, and it has to make that finding through a detailed consideration of the Miller factors. Does that make sense? It does. Thank you. And just to confirm, you did make the argument that the trial court's finding of rehabilitative potential does preclude a life sentence. That's the entire Part A of our brief. And the fact that the court reduced the sentence, I think that only confirms the trial court's finding of rehabilitative potential. I don't think that means the trial court did enough here. Again, at the time, the trial court did enough to make that clear, so it's a fact of life. You've argued in the brief that the trial court did overlook and misapply certain factors here. Contrary to the State's contention, the absence of home life is listed in 730 ILCS by the New Juvenile Accident Statute 4.5105. The trial court shall consider any history of preemptive neglect in litigation. And that was presented in the PSI. It wasn't in the evidence support report. Very briefly, the five sentencing cases cited by the court, the first one was Rodriguez. There was no lower charge raised in that case. It was just an Illinois proportionate penalties challenge. In that instance, the court also found that it was not a factor of life sentence. They said you don't have to get rehabilitative potential right away. Patterson, Croft, Davis, Johnson, every single case, I won't quote anyone because I know it's in the briefs, they found the trial court made either an express or implicit finding of incorrigibility, and they affirmed that finding. Here we do have the trial court finding a lack of or finding rehabilitative potential and a record for robbery instead. And very briefly on the first argument, the prosecutor's questions to me were absolutely necessary to establish, to lay the foundation to ultimately introduce prior testimony. But prosecutor's questions aren't evidence. It's the answer that goes along with those questions. And here the answer is I don't recall. The state still had to put the transcripts to the jury in some form. And as far as invited error, what defense counsel actually said was he did not want the, he didn't think the transcripts needed to be given by the jury. He doesn't see any reason why the jury needs to see those. He never said that he was prepared to stipulate. He said he was prepared to stipulate the accuracy of the transcript to the court. He didn't want the jury to see the transcripts, but he maintained he still would state the jury need, the jury need to be presented with those transcripts in some form. Well, how can they be presented with them and not see them? But he didn't want them to go back to the general deliberations. That's what I took his argument to be. And they could still stipulate, since he was willing to stipulate. He gave the testimony and we asked him about, or published the statements to the jury. He just didn't think the jury needed to see the deliberations, and he did say that twice. So you're suggesting that counsel would have been okay with publishing by passing around the transcripts while they were still in the jury box before they retired for deliberation, just as long as the transcripts didn't go back to the jury? Yes, I think so. I do think so. To his part, we make that argument all the time, because then if you look at something in the jury room and that's what you have there, you give that importance over the testimony given.  But his whole objection was based on, it's already before the jury, they've already heard it. So I don't think that holds weight. That wasn't his whole, I think that was part of his objection. The jury has heard it, we don't need to have them see it. It's not something that needs to be given to them in deliberations. I think that's different. Does this put any other questions on your mind? I don't see any at this time. Thank you. We'll take this matter under advisement and be in recess until the next case.